AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☑ Original ☐ D... 

**CLERK'S OFFICE**
A TRUE COPY
Dec 12, 2022
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| In the Matter of the Search of | ) |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| Information associated with the Apple IDs and Apple iCloud accounts described in Attachment A. | ) |

Case No. 22 MJ 195

Matter No. 2021R00182

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____

*(identify the person or describe the property to be searched and give its location):*

See Attachment A. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711 and 18 U.S.C. § 2711(3)(A)(i).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 12/26/2022 *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Hon. William E. Duffin .

*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: 12/12/2022 at 11:37 AM

*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable William E. Duffin, U.S. Magistate Judge

*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**<u>ATTACHMENT A</u>**

**Property to Be Searched**

**Matter Number 2021R182**

This warrant applies to information associated with the Apple IDs and Apple iCloud accounts associated with the following information, that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at Apple Inc., One Apple Park Way, Cupertino, California 95014.

    **Account 1:**
        Name: Andrew Crawford
        Date of Birth: 09/22/1997
        Phone: 414-737-8191
        Addresses: 2418 N Bremen St, Milwaukee, WI 53212
                 1500 Marquette Ave, South Milwaukee, WI 53172
        Email: *[dreambiginc.710@iCloud.com](mailto:dreambiginc.710@iCloud.com)*.

Page 1

**ATTACHMENT B**

**Particular Things to be Seized**

**Matter Number 2021R182**

I.      **Information to be disclosed by Apple**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.      All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.      All records or other information regarding the devices associated with, or used in connection with, the accounts (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"),

Page 2

Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.     The contents of all emails associated with **Account 1 from July 1, 2020 to present day** including stored or preserved copies of emails sent to and from the accounts (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.     The contents of all instant messages associated with **Account 1 from July 1, 2020 to present day**, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the accounts (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.     The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud

Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.      All activity, connection, and transactional logs for the accounts (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.      All records and information regarding locations where the accounts or devices associated with the accounts were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h.      All records pertaining to the types of service used;

i.      All records pertaining to communications between Apple and any person regarding the accounts, including contacts with support services and records of actions taken; and

j.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Page 4

The Provider is hereby ordered to disclose the above information to the government within fourteen days of service of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence and/or instrumentalities of possession with intent to distribute controlled substances, and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, which have been committed by Austin MISURACO, aka "Stewie," Darlin CONTRERAS-LANTIGUA, Andrew CRAWFORD, Alexander CRAWFORD Andrew CRAWFORD, Quentin Moore, Quincy Moore, Montrice Hood ,and other identified and unidentified subjects during the period of **July 1, 2020 to present**, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.  any information relating to Austin MISURACO, aka "Stewie," Darlin CONTRERAS-LANTIGUA, Andrew CRAWFORD, Alexander CRAWFORD Andrew CRAWFORD, Quentin Moore, Quincy Moore, Montrice Hood, possession, or purchase of controlled substances;

b.  lists of customers and related identifying information;

c.  information related to types, amounts, and prices of firearm and drugs trafficked as well as dates, places, and amounts of specific transactions;

d.  any information related to sources of firearms and drugs (including names, addresses, phone numbers, or any other identifying information);

e.  communications related to drug and firearm trafficking, including electronic communications such as text and instant message;

f.  any information recording Austin MISURACO, aka "Stewie," Darlin CONTRERAS-LANTIGUA, Andrew CRAWFORD, Alexander CRAWFORD Andrew CRAWFORD, Quentin Moore, Quincy Moore, Montrice Hood schedule or travel;

g.  all bank records, checks, credit card bills, account information, and other financial records;

h.  The identity of the person(s) who created or used the Apple ID, including records that help reveal the whereabouts of such person(s);

Page 5

| | |
|---|---|
| i. | Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber; |
| j. | Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information); |
| k. | Evidence indicating the subscriber's state of mind as it relates to the crime under investigation; and |
| l. | Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts. |

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, case agents, including DCI and USPIS, may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

Page 6

CLERK'S OFFICE
A TRUE COPY
Dec 12, 2022
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* ) | Case No.    22    MJ    195 |
| ) | |
| Information associated with the Apple IDs and Apple iCloud accounts described in Attachment A. ) | Matter No. 2021R00182 |
| ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711 and 18 U.S.C. § 2711(3)(A)(i).

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Conspiracy to distribute and possession with intent to distribute controlled substances, and distribution and possession with intent to distribute controlled substances. |

The application is based on these facts:

Please see attached affidavit, which is hereby incorporated by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Mitchell Ward - DCI SA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: _____12/12/2022_____

_____
*Judge's signature*

City and state:   Milwaukee, Wisconsin

Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT
### Matter Number 2021R182

I, Mitchell G Ward, being first duly sworn, hereby depose and state as follows:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple Inc. (hereafter "Apple") to disclose to the government records and other information, including the contents of communications, associated with Apple iCloud account associated with the following information, and further described in Attachment A, that is stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at 1 Infinite Loop, Cupertino, CA:

> **Account 1:**
> Name: Andrew Crawford
> Date of Birth: 09/22/1997
> Phone: 414-737-8191
> Addresses: 2418 N Bremen St, Milwaukee, WI 53212
>              1500 Marquette Ave, South Milwaukee, WI 53172
> Email: dreambiginc.710@iCloud.com

2.    The information to be disclosed by Apple and searched by the government is described in the following paragraphs and in Attachments A and B.

3.    I am a state certified law enforcement officer employed as a Special Agent with the Wisconsin Department of Justice, Division of Criminal Investigation, (DCI) and have been a sworn officer in the State of Wisconsin for over 30 years.  I am currently assigned to DCI's Milwaukee Field Office, Narcotics Bureau.  I am also a federally deputized task force officer for the United States Postal Inspection Service ("USPIS").  As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18,

1

United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

4.     The USPIS is the primary investigative arm of the United States Postal Service ("USPS") and is charged under Title 18, United States Code, 3061 with the enforcement of laws governing the use and movement of the United States Mail, including the misuse and fraudulent schemes involving the mail, crimes relating to mail fraud, narcotics trafficking and identity theft involving the United States Mail.

5.     I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps.

6.     My training and experience include the following:

    a.     Through informant interviews and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations finance, source, purchase, transport, and distribute controlled substances in Wisconsin, throughout the United States, and internationally.

    b.     I have used my training and experience to locate, identify, and seize multiple types of narcotics, drugs, drug proceeds, and drug contraband.

    c.     I have also relied upon informants to obtain controlled substances from drug traffickers and have made undercover purchases of controlled substances.

    d.     I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled

substances, drug paraphernalia, and drug trafficking records were seized.

e.    I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug traffickers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances.

f.    I am familiar with the language used over the telephone and other electronic communications to discuss drug trafficking and know that the language is often limited, guarded, and coded. I know the various code names used to describe controlled substances. I also know that drug traffickers often use electronic devices (such as computers and cellular phones), electronic communication services (such as e-mail and messaging services), and social media to facilitate these crimes.

g.    I know drug traffickers often register phones, mailboxes, bank accounts, electronic communication services, and other instrumentalities of drug trafficking in the names of others, also known as nominees, to distance themselves from instrumentalities used to facilitate drug trafficking.

h.    I know that drug traffickers often use electronic equipment and wireless and landline telephones to conduct drug trafficking operations.

i.    I know that drug traffickers often keep documents and records about the transportation, sourcing, ordering, sale, and distribution of controlled substances.

j.    I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase or title these assets in order to avoid scrutiny from law enforcement officials. I know that drug traffickers often secure drug proceeds at locations within their dominion and control, such as their residences, businesses, and storage facilities, and in safes or other secure containers.

k.    I know that drug traffickers often attempt to protect and conceal drug proceeds through money laundering, including but not limited to domestic and international banks, securities brokers,

service professionals such as attorneys and accountants, casinos, real estate, shell corporations, business fronts, and otherwise legitimate businesses which generate large quantities of currency. I know it is common for drug traffickers to obtain, secrete, transfer, conceal, or spend drug proceeds, such as currency, financial instruments, precious metals, gemstones, jewelry, books, real estate, and vehicles. I know it is common for drug traffickers to maintain documents and records of these drug proceeds, such as bank records, passbooks, money drafts, transaction records, letters of credit, money orders, bank drafts, titles, ownership documents, cashier's checks, bank checks, safe deposit box keys, money wrappers, and other documents relating to the purchase of financial instruments or the transfer of funds. I know drug traffickers often purchase or title assets in fictitious names, aliases, or the names of relatives, associates, or business entities to avoid detection of these assets by government agencies. I know that even though these assets are titled or purchases by nominees, the drug traffickers actually own, use, and exercise dominion and control over these assets. The aforementioned books, records, receipts, notes, ledgers, and other documents are often maintained where the traffickers have ready access. These may be stored in hard copy or soft copy on paper, computers, cellular devices, and other electronic media or electronic storage devices.

l.   I know drug traffickers maintain large amounts of currency, including in readily accessible financial accounts, to finance their ongoing drug business. I know that those involved in drug trafficking or money laundering keep records of their transactions. Because drug trafficking generates large sums of cash, drug traffickers often keep detailed records about the distribution of narcotics and the laundering of proceeds. I also know that drug trafficking and money laundering activities require the cooperation, association, and communication between and among a number of people. As a result, people who traffic in narcotics or launder money for such organizations possess documents that identify other members of their organization, such as telephone books, address books, handwritten notations, telephone bills, and documents containing lists of names and addresses of criminal associates. Such records also provide information about the identities of

Page 4

coconspirators who launder money and traffic drugs. I also know that drug traffickers commonly maintain addresses or telephone numbers which reflect names, addresses, or telephone numbers of their drug trafficking and money laundering associates in hard copy and soft copy on papers, books, computers, cellular devices, and other electronic media or electronic storage devices.

m. I know drug traffickers often use electronic devices, such as telephones, cellular devices, computers, and currency counting machines to generate, transfer, count, record, or store the information described above and conduct drug trafficking and money laundering. I am familiar with computers, cellular devices, pagers, and other electronic media or electronic storage devices and their uses by drug traffickers to communicate with suppliers, customers, co-conspirators, and fellow traffickers. These devices often contain evidence of illegal activities in the form of communication records, voicemail, email, text messages, video and audio clips, location information, business records, and transaction records. I know drug traffickers take, store, preserve, or maintain photographs or videos of themselves, their associates, their property, their drugs, and their drug proceeds. These traffickers usually maintain these photographs or videos on computers, cellular devices, and other electronic media or electronic storage devices. Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime; and (2) the objects may have been used to collect and store information about crimes. I know the following information can be retrieved to show evidence of use of a computer or smartphone to further the drug trade: system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; computer media and any data contained within such media; operating system software, application or access program disks, manuals, books, brochures, or notes, computer access codes, user names, log files, configuration files, passwords, screen names, email addresses, IP addresses, and SIM cards.

Page 5

n.    I have participated in numerous drug trafficking investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. This has led to evidence of the crimes under investigation and corroborated information already known or suspected by law enforcement. I have regularly used electronic evidence to find proof relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of suspects and conspirators.

o.    I have also participated in the execution of numerous premises search warrants and arrests, where controlled substances, firearms, drug paraphernalia, drug proceeds, electronic devices, and records relating drug trafficking and drug proceeds were seized. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such.

p.    I have been assigned to court-authorized wiretaps and have been trained to operate the equipment used to conduct such operations.

7.    I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

8.    This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during their official duties, all of

Page 6

whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. Because this affidavit is submitted for the limited purpose of securing authorization for search warrants, I have not included each fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for the requested search warrants.

9. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846 have been committed by Austin MISURACO, aka "Stewie," Darlin CONTRERAS-LANTIGUA, Andrew CRAWFORD, Alexander CRAWFORD Andrew CRAWFORD, Quentin Moore, Quincy Moore, Montrice Hood, and other identified and unidentified individuals. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## II. JURISDICTION

10. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

### III.    PROBABLE CAUSE

11.    I am currently participating in an investigation of cocaine, marijuana, MDMA, acid and ketamine trafficking, possession of machinegun, and possession of firearms by prohibited persons involving Austin MISURACO, aka "Stewie," Darlin CONTRERAS-LANTIGUA, Andrew CRAWFORD, Alexander CRAWFORD Andrew CRAWFORD, Quentin Moore, Quincy Moore, Montrice Hood, and other identified and unidentified individuals.  I am familiar with the facts and circumstances regarding this investigation as a result of my personal participation in this investigation, and my review of: (a) consensually recorded telephone conversations and face-to-face meetings; (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers; (c) information obtained from numerous witnesses, including confidential sources; (d) controlled buys; (e) documentary evidence; (f) physical and electronic surveillance; and (g) physical seizures.

12.    Case agents were made aware of a Milwaukee area armed drug trafficking organization (ADTO) led by Austin MISURACO.  MISURACO uses a variety of communication applications to distribute narcotics including Instagram, Signal, SnapChat and others. Austin MISURACO has used account usernames such as "bestplug-414", "414Plug", "milwaukee1414", and "Best Plug". In addition to distributing cocaine, Austin MISURACO is also involved in distributing large amounts of Acid, MDMA (Molly), Phycobilin (Mushrooms), THC Vape Cartridges, THC and THC concentrate (Wax). Several other members of Austin MISURACO's drug trafficking organization have been identified which include Andrew CRAWFORD and Alexander CRAWFORD, as well as street level dealers associated with the Blow Boyz street gang. Members include Quentin Moore, Quincy Moore (Quentin's brother), and Montrice Hood.

13.     On Tuesday, April 13, 2021, officers from the City of Milwaukee Police Department (MPD) executed a state search warrant at 8631 North Servite Drive, unit 215, Milwaukee, WI. The target of the search warrant was Austin D MISURACO. The warrant also authorized the search of Austin MISURACO's 2015, silver four door Dodge Charger (vin#2C3CDXGJ6FH833349), which was observed fleeing from law enforcement on two occasions. When officer entered Austin MISURACO's residence, they observed evidence of drugs.  Officers froze the scene and obtained a search warrant for controlled substances.

14.     Inside Austin MISURACO's residence officers found over $130,000.00 in US currency, a Bushmaster .556 semiautomatic rifle, a FN 5.7 semiautomatic pistol, a Ruger 9mm semiautomatic pistol, approximately 18.5 grams of suspected marijuana, an electronic money counter, Austin MISURACO's iPhone 11 and documents belonging to Austin MISURACO. Officers also observed several security cameras outside of Austin MISURACO's residence.

15.     From Austin's MISURACO's 2015 Dodge Charger, officers found approximately 18 grams of cocaine base (packaged for sales and distribution), approximately 450 grams of suspected marijuana, a digital gram scale and empty packaging. The empty packaging consisted of a kilogram wrapper inside of a grocery bag along with dryer sheets. The residue on the packaging tested positive for the presence of cocaine. Additionally, evidence technicians from MPD recovered latent prints from the kilogram wrapper that were identified as belonging to Austin MISURACO.

16.     On April 13, 2021, Austin MISURACO provide a Mirandized interview. Austin MISURACO expressed an interest to officers in cooperating with law enforcement. Austin MISURACO told case agents he knows a Puerto Rican male who lives on the southside of Milwaukee who sells kilogram quantities of cocaine and a white male known to Austin

Page 9

MISURACO as "Shaggy" who sells kilogram quantities of cocaine, ketamine, molly (MDMA) and mushrooms (psylocibin).

17.     On April 16, 2021, MPD obtained a state search warrant for Austin MISURACO's iPhone 11. Case agents reviewed Austin MISURACO's extraction reports. Upon reviewing the extraction report, the report shows Austin MISURACO is trafficking cocaine, MDMA, marijuana, prescription drugs, acid, and mushrooms. Austin MISURACO is using various messaging applications such as Snapchat, Telegram and Signal to facilitate the sales and distribution of narcotics in the greater Milwaukee area. MISURACO regularly posts price lists and photos of narcotics on social media. Case agents reviewed numerous messages related to drug trafficking between Austin MISURACO and his DTO members: Quentin MOORE, Andrew MISURACO, Andrew CRAWFORD, and Montrice HOOD.

18.     Case agents located text messages between Austin MISURACO and Andrew CRAWFORD, using telephone number 414-286-1110.  Case agents determined the user of 414-286-1110 was Andrew CRAWFORD based on messages in which Austin MISURACO and Andrew CRAWFORD discussed his twin brother Alexander CRAWFORD.  On July 21, 2020, Austin MISURACO texted, "…stay safe bro I'm always here for both y'all an if Alex need anything I'm here for him to bro…" Andrew CRAWFORD responded which included a discussion of getting $5000 for pay off "bro's" lawyer. Based on the investigation into the DTO, case agents were aware that Alexander CRAWFORD was arrested in the Middle District of Florida on drug charges in May 2020 and he was later sentenced on November 10, 2020.   *United States v. Alexander Eric Crawford, 20-CR-91.*

19.     Case agents located additional text messages between Austin MISURACO and Andrew CRAWFORD (414-286-1110) discussion drug sales.

Page 10

20.    Between July 21, 2020, and July 24, 2020, Andrew CRAWFORD and Austin MISURACO messaged each other regarding the amounts of controlled substances they would sell and purchase.

| Date | Time | Sender | Message |
|---|---|---|---|
| | UTC-05:00 | 286-1110 | |
| 07/21/2020 UTC-05:00 | 07:56:06 | (414) 286-1110 | You up? I'm out here lmk |
| 07/21/2020 UTC-05:00 | 17:36:41 | (414) 286-1110 | Wanna sell 10 10s? Or 20? |
| 07/21/2020 UTC-05:00 | 17:51:59 | stew | Tomorrow I can I sold them all I get fresh script tho tomorrow |
| 07/21/2020 UTC-05:00 | 18:01:21 | (414) 286-1110 | Wanna go half on it ? |
| 07/21/2020 UTC-05:00 | 18:01:29 | (414) 286-1110 | 10s right? |
| 07/21/2020 UTC-05:00 | 18:01:59 | (414) 286-1110 | Dude wanna give me 9k cash and 1000 roves for the glos bro should I do it |
| 07/21/2020 UTC-05:00 | 18:02:54 | stew | Hell yeah miight as well but only if you got a buyer on the roves |
| 07/21/2020 UTC-05:00 | 18:03:25 | (414) 286-1110 | I do but I don't like they kinda go as singles |
| 07/21/2020 UTC-05:00 | 18:03:31 | (414) 286-1110 | Should I tell dude just cash b |
| 07/21/2020 UTC-05:00 | 18:04:05 | stew | Just cash then nbs |
| 07/21/2020 UTC-05:00 | 18:19:56 | (414) 286-1110 | Yeah fuck it cash |
| 07/21/2020 UTC-05:00 | 18:20:08 | (414) 286-1110 | But I did pay 10 a pop on them so it comes out to 19 k |
| 07/21/2020 UTC-05:00 | 18:21:09 | stew | No cap |
| 07/21/2020 UTC-05:00 | 18:31:28 | (414) 286-1110 | Then if need any to dump it you wanna switch it up we can but damn near cash so we can catch another load |
| 07/22/2020 UTC-05:00 | 12:11:52 | (414) 286-1110 | What it do |
| 07/22/2020 UTC-05:00 | 15:04:19 | (414) 286-1110 | Selling 2 p of the wax today 1 left |
| 07/22/2020 UTC-05:00 | 15:04:28 | (414) 286-1110 | Can you get any bud? |
| 07/23/2020 UTC-05:00 | 09:51:42 | stew | My guy had some when I was in car last night before u left it was some gas but tryna charge 2500 I'm waiting to hear from my other guy first |
| 07/23/2020 UTC-05:00 | 09:52:37 | (414) 286-1110 | Okay that's not too bad send pics ? |
| 07/23/2020 UTC-05:00 | 15:31:42 | (414) 286-1110 | Should I get more wax or stick with the glos foo |
| 07/23/2020 UTC-05:00 | 20:05:32 | (414) 286-1110 | Bro said keep your head high |
| 07/24/2020 UTC-05:00 | 10:06:54 | stew | Yeah my fault yesterday I was gone off the Erks cuz but if you tryna see me lmk before 3 |
| 07/24/2020 UTC-05:00 | 10:11:59 | stew | I zip pop for u |

21.    Based [...] ce to amounts of controlled substance [...] en used by drug dealers for oxycodo [...] d 1000 roves for the glos bro", based on my training, experience, and investigation in this DTO, is a reference to $9,000 and 1000 MDMA tablets in trade for marijuana concentrate or "wax". On July 22, 2020, Andrew CRAWFORD updated Austin MISURACO that he was "Selling 2 p of the wax today 1 left". They then go on and discussed getting more "wax". This is again consistent with Andrew

Page 11

CRAWFORD and Austin MISURACO working together to sell marijuana. Additionally, text messages in July 2020 discussed other controlled substances like "molly" and "perk".

22. Case agents located messages between Austin MISURACO (262-385-6404) and "Andy Twin" 414-405-8441. Based on the content of the messages and review of law enforcement databases, case agents determined this number is associated with Andrew CRAWFORD. Also, as previously noted, Andrew CRAWFORD is a twin.

23. In October and November 2020 Austin MISURACO and Andrew CRAWFORD discussed travel and what appears to be coordinating the purchase of controlled substances.

| Sent | From | Message |
|---|---|---|
| 10/19/2020 UTC-05:00 | 14:01:55 (414) 405-8441 | Sorry, I can't talk right now. |
| 10/19/2020 UTC-05:00 | 14:02:02 (262) 385-6401 | Bitch |
| 10/19/2020 UTC-05:00 | 14:02:05 (262) 385-6401 | Lol wya |
| 10/21/2020 UTC-05:00 | 09:18:12 (414) 405-8441 | |
| 10/24/2020 UTC-05:00 | 12:12:04 (414) 405-8441 | 2 pounds |
| 10/27/2020 UTC-05:00 | 13:09:14 (262) 385-6401 | Hold on phone |
| 10/27/2020 UTC-05:00 | 13:40:10 (414) 405-8441 | Ok |
| 10/29/2020 UTC-05:00 | 13:37:24 (414) 405-8441 | |
| 11/01/2020 UTC-06:00 | 15:10:52 (414) 405-8441 | Airport loud |
| 11/01/2020 UTC-06:00 | 21:38:24 (414) 405-8441 | Missed ur call just got back |
| 11/02/2020 UTC-06:00 | 21:19:03 (414) 405-8441 | Pick up fucker |
| 11/05/2020 UTC-06:00 | 14:24:27 (262) 385-6401 | Missed Alex call |
| 11/05/2020 UTC-06:00 | 14:24:38 (414) 405-8441 | On phone w him now |

24. I ...with Andrew CRAWFORD a... (high grade marijuana). F... vin brother, Alexander CRAWFORD.

25. Andrew CRAWFORD and Austin MISURACO conversation continued in November 2020.

Page 12

| Date/Time | Number | Message |
|---|---|---|
| 11/06/2020 UTC-06:00 | 10:42:21 (262) 385-6401 | Hurry up I'm on phone with Alex |
| 11/06/2020 UTC-06:00 | 10:45:13 (414) 405-8441 | I'm not going to be able to pay it before you get off the phone with him I'm at home |
| 11/06/2020 UTC-06:00 | 10:45:21 (414) 405-8441 | I gotta get to the store to pay it |
| 11/06/2020 UTC-06:00 | 20:48:45 (414) 405-8441 | Yo |
| 11/06/2020 UTC-06:00 | 21:00:30 (262) 385-6401 | Is their police their or was that bullshit |
| 11/06/2020 UTC-06:00 | 21:15:13 (414) 405-8441 | I'm not sure |
| 11/07/2020 UTC-06:00 | 13:40:51 (414) 405-8441 | Call me |
| 11/07/2020 UTC-06:00 | 13:40:53 (414) 405-8441 | $$$ |
| 11/10/2020 UTC-06:00 | 15:30:31 (262) 385-6401 | Who the dude he shouted in Wisconsin |
| 11/10/2020 UTC-06:00 | 15:31:29 (414) 405-8441 | Me lol |
| 11/10/2020 UTC-06:00 | 15:31:46 (414) 405-8441 | Hope they don't jack me I gotta go to the parking garage lol |
| **11/10/2020 UTC-06:00** | **15:31:56 (414) 405-8441** | **And Andy gotta wait you here .. lil skeptical** |
| 11/10/2020 UTC-06:00 | 15:32:00 (414) 405-8441 | |
| 11/10/2020 UTC-06:00 | 15:32:08 (262) 385-6401 | Lmao Alex said he hot trippin be careful |
| 11/10/2020 UTC-06:00 | 15:32:23 (414) 405-8441 | Me ? Yeah I know but shit he prob been hot |
| 11/10/2020 UTC-06:00 | 15:33:28 (262) 385-6401 | Yeah but he in legal state an if Alex gave him their snap be smooth |
| 11/10/2020 UTC-06:00 | 15:34:14 (414) 405-8441 | Yeah I know . Shit |
| 11/10/2020 UTC-06:00 | 15:34:26 (414) 405-8441 | ... hmm idk . I'm sure eveything a be alright |
| 11/10/2020 UTC-06:00 | 16:04:19 (414) 405-8441 | On my way! Home |
| 11/14/2020 UTC-06:00 | 21:21:13 (414) 405-8441 | Bro b B out to call you |
| 11/18/2020 UTC-06:00 | 20:56:04 (414) 405-8441 | |
| 11/18/2020 UTC-06:00 | 20:56:06 (414) 405-8441 | In case anything happen |
| 11/18/2020 UTC-06:00 | 21:07:12 (262) 385-6401 | What u getting hotel room |
| 11/18/2020 UTC-06:00 | 21:07:17 (262) 385-6401 | Burn the wax first |
| 11/18/2020 UTC-06:00 | 21:07:31 (414) 405-8441 | I'm going to and not it's his penthouse |
| 11/18/2020 UTC-06:00 | 23:18:11 (262) 385-6401 | You good buddy |
| 11/18/2020 UTC-06:00 | 23:18:47 (414) 405-8441 | Yea only grabbed 7 but they sold tonight in about hour |
| 11/18/2020 UTC-06:00 | 23:19:14 (414) 405-8441 | So shit I'm be Gucci |
| 11/18/2020 UTC-06:00 | 23:33:12 (262) 385-6401 | Okay make sure you good |
| 11/18/2020 UTC-06:00 | 23:33:23 (262) 385-6401 | Thought u were getting 15 lol |
| 11/18/2020 UTC-06:00 | 23:34:36 (414) 405-8441 | No I didn't wanna spend all that and apparently they "ran out " anywa |
| 11/19/2020 UTC-06:00 | 11:16:22 (414) 405-8441 | Al is gonna call you |
| 11/21/2020 UTC-06:00 | 11:20:26 (414) 405-8441 | Look at this trash buddy tryna sell me for 2 k a unit talking bout it's medical 😂 |
| 11/21/2020 UTC-06:00 | 11:20:58 (414) 405-8441 | |
| 11/21/2020 UTC-06:00 | 11:49:42 (262) 385-6401 | Lmaoo |
| 11/21/2020 UTC-06:00 | 11:50:05 (414) 405-8441 | Dawg he paid 1850 on them he said I know he lying them are definitely stack packs |
| 11/21/2020 UTC-06:00 | 11:50:54 (414) 405-8441 | |
| 11/21/2020 UTC-06:00 | 11:56:49 (262) 385-6401 | See look better |

| | | |
|---|---|---|
| 11/14/2020<br>UTC-06:00 | 21:21:14 (414)<br>405-8441 | Be is |
| 11/14/2020<br>UTC-06:00 | 21:21:22 (414)<br>405-8441 | Alex bout to call you |
| 11/17/2020<br>UTC-06:00 | 14:58:50 (414)<br>405-8441 | Yo |
| 11/17/2020<br>UTC-06:00 | 14:58:53 (414)<br>405-8441 | What's up |
| 11/17/2020<br>UTC-06:00 | 18:55:05 (414)<br>405-8441 | Mf fr call me back |
| 11/17/2020<br>UTC-06:00 | 20:16:46 (414)<br>405-8441 | Alex called |
| 11/18/2020<br>UTC-06:00 | 11:47:51 (414)<br>405-8441 | Al said pick up |
| 11/18/2020<br>UTC-06:00 | 11:48:47 (262)<br>385-6401 | He ain't called me today |
| 11/18/2020<br>UTC-06:00 | 11:49:33 (414)<br>405-8441 | He gon call ima 3 way it |

26.     Again, based on my training and experience, these messages are consistent with Austin MISURACO and Andrew CRAWFORD, working together to obtain and distribute controlled substances.  On November 6, 2020, Austin MISURACO (262-385-6404) discussed police with Andrew CRAWFORD.  On November 10, 2020, Austin MISURACO warned Andrew CRAWFORD that "Alex said he hot trippin be careful", which is based on my training and experience means police may be present or looking at an individual for criminal violations. Further, based on my training and experience DTO members will warn other members of law enforcement presences or concerns in order to protect the DTO as a whole.

27.     On November 18, 2020, Austin MISURACO texted Andrew CRAWFORD, "Burn the wax first".  This statement is consistent with the manufacturing of wax marijuana.  Case agents located several videos on Austin MISURACO show wax marijuana and well as messages selling the wax marijuana. Continuing on November 18, 2020, through November 21, 2020, Austin MISURACO and Andrew CRAWFORD discussed prices of the controlled substances.   For example, "Look at this trash buddy tryna sell me for 2 k a unit talking about it's medical" and "Dawg he paid 1850 on them he said I know he lying them are definitely stack packs."

28.     Case agents reviewed several recorded phone calls made by Austin MISURACO from the Milwaukee County Jail after his arrest. On April 14, 2021, Austin MISURACO made a

Page 14

call to his girlfriend, Destiny Frazier. Austin MISURACO discussed with Frazier two Gucci bags taken by the police which contained $80,000 and $50,000. In addition to discussing the circumstances of his arrest, Austin MISURACO also asked Frazier to make third party calls to other members of his DTO, including his brother, Andrew MISURACO. Austin MISURACO discussed amounts of money owed to him by other members of his DTO. Austin MISURACO told his brother to collect these debts. Austin MISURACO told his brother "Fat", who was identified as Quinten MOORE owed Austin MISURACO $10,500 and "Nu-Nu", who case agents have identified as Montrice HOOD owes him $1,500. Austin MISURACO also discussed other co-conspirators including "Shags", who case agents identified as Shawn SENTER and Andrew CRAWFORD, who Austin MISURACO identifies on recording by first and last name.

29.      In addition to correspondence with numerous customers and ADTO members, the extraction contains conversations with drug suppliers. The extraction contains short videos and images of kilograms of cocaine stamped with "C19" A number of these images contain the meta data showing the time and location the videos were created. One such image was created at the address of 1611 South 30th street.  Law enforcement data bases indicate Darlin Maicol Contreras Lantigua.

30.      A further check of Austin MISURACO's contacts, shows Darlin CONTRERAS-LANTIGUA as a Snapchat contact associated with telephone number 414-552-1905 and having the username of "woah_negro" and CONTRERAS-LANTIGUA's number 414-552-1905 saved as "Papa."

31.      In August of 2021, case agents interviewed CI-2 regarding this investigation. CI-2 positively identified a photo of Darlin CONTRERAS-LANTIGUA XX/XX/1990 as a cocaine dealer known to the CI-2 as "Darlin." CI-2 stated that Darlin CONTRERAS-LANTIGUA is from

the Dominican Republic and has close family members still living there. CI-2 knows that CONTRERAS-LANTIGUA receives cocaine through the United States Postal Service. CI-2 stated that the cocaine is transported to Puerto Rico where it is then mailed to CONTRERAS-LANTIGUA in Milwaukee, Wisconsin.

32.     CI-2 has known CONTRERAS-LANTIGUA for several years and has purchased over a kilogram of cocaine from CONTRERAS-LANTIGUA. CI-2 typically purchases one to two ounces at a time from CONTRERAS-LANTIGUA and pays $1300 per ounce. CI-2 knows that CONTRERAS-LANTIGUA has the phone number of 414-552-1905 that CONTRERAS-LANTIGUA uses to conduct sales of cocaine. Telephone 414-552-1905 was saved as contact "Papa" in Austin MISURACO's cellphone extraction. CI-2 has seen CONTRERAS-LANTIGUA in possession of a gun on numerous occasions and knows that CONTRERAS-LANTIGUA has a carrying concealed permit.

33.     Additionally, CI-2 knows that CONTRERAS-LANTIGUA works as a barber at the "Santa Salon" located at 1622 West Mitchell Street, Milwaukee Wisconsin. CI-2 has purchased cocaine from CONTRERAS-LANTIGUA at this location in the past.    CI-2 stated that the barbershop is owned by Santa FUENTE PEREZ who is aware CONTRERAS-LANTIGUA traffics cocaine from the shop. Additionally, CI-2 stated that FUENTE PEREZ and others take commercial airline flights to the Dominican Republic carrying large amount of bulk currency on behalf of CONTRERAS-LANTIGUA.    A check of law enforcement data bases shows that FUENTE PEREZ has made five United States/Dominican Republic between March of 2019 and May of 2021.

34.     CI-2's information is credible and reliable because CI-2 has given information concerning individuals involved in illegal activities, which has been independently verified

through this investigation including through controlled drug buys, queries of law enforcement databases, and surveillance. CI-2 has no felony convictions but does have a misdemeanor conviction for disorderly conduct and some traffic violations. CI-2 has no arrests or convictions relating to dishonesty. CI-2 is cooperating with law enforcement in exchange consideration regarding a misdemeanor theft offense and for monetary compensation.

35.     In October 2022, Case Agents conducted a debriefing with a Wisconsin Department of Justice Department of Criminal Investigations confidential source, CI 3546.  CI 3546 stated they had recently been contacted by a subject known to them as Alexander E. CRAWFORD. Alexander CRAWFORD had contacted CI 3546 initially through "SnapChat," but after the conversation started Alexander CRAWFORD called CI 3546 through "Signal," which I know to be a third-party messaging application often used by drug traffickers in efforts to conceal their illegal activities.  CI 3546 stated the phone number associated to Alexander CRAWFORD's Signal account was 414-748-1534, and the screen name associated with Alexander CRAWFORD's Signal account was "Mr Jefe."  CI 3546 stated Alexander CRAWFORD began offering to sell him/her kilogram quantities of cocaine for $32,000 per kilogram. Alexander CRAWFORD also offered to sell CI 3546 half kilogram or quarter kilogram amounts of cocaine (one quarter kilogram is approximately nine ounces or 250 grams).  CI 3546 also provided case agents with a video sent to him/her by Alexander CRAWFORD, through Signal which appeared to show a kilogram of cocaine, and an unidentified hand breaking a piece off the cocaine.  CI 3546 was aware Alexander CRAWFORD was currently on parole for a narcotic related arrest in Florida.

36.     As part of the investigation into the DTO, case agents also reviewed police reports filed by officers from the City of Milwaukee Police Department that indicate Andrew CRAWFORD and Alexander CRAWFORD are twin brothers. Case agents are aware Andrew

CRAWFORD is currently on probation with the Wisconsin Department of Corrections (DOC)as result of a felony drug conviction in Waukesha County Circuit Court Case 2015CF1309. Case agents spoke to Andrew CRAWFORD'S probation agent who took photographs of Andrew CRAWFORD and his tattoos in March of 2022. Initially, prior to the below outlined controlled purchases, case agents believed Andrew CRAWFORD did not have tattoos on his hands or neck given past arrest and his DOC photos (figure 1).



Figure 1

37.     A check of law enforcement databases showed Alexander CRAWFORD was arrested in Florida on May 26, 2020, for conspiracy to distribute narcotics. Alexander CRAWFORD was out of custody as of July 7, 2022, and is currently on federal supervision until July 6, 2025. Alexander CRAWFORD provided the telephone numbers of 414-748-1534 and 414-779-3268 to probation and parole as his contact number. Alexander CRAWFORD also provided the **TARGET LOCATION** to his agent as his home address. In reviewing a DOC photo from May 2019 of Alexander CRAWFORD, Alexander CRAWFORD had neck tattoos (figure 2). CI 3546 confirmed with case agents Alexander CRAWFORD has neck tattoos.

Page 18



Figure 2

38.     Prior to the controlled purchase on October 14, 2022, case agents conducted surveillance at Alexander CRAWFORD's residence reported to his federal probation agent, 2872 South 16th Street, Milwaukee, WI. Case agents observed a white Lexus RX with Wisconsin license plate, APT-4987 parked directing in front of Alexander CRAWFORD's residence.    The White Lexus RX SUV with Wisconsin license plate, APT-4987 is registered to Alexander CRAWFORD with a listed address of 124 Cook Street, Waukesha, WI. If should be noted case agents did conduct surveillance at 124 Cook Street, Waukesha, WI and never observed Alexander CRAWFORD or Andrew CRAWFORD at this location.

39.     On October 14, 2022, under the direction of case agents, CI 3546 arranged to purchase nine ounces of cocaine from Alexander CRAWFORD in exchange of $9,000 using Alex CRAWFORD's telephone 414-748-1534.   CI 3546 negotiated the purchase with Alexander CRAWFORD through the Signal application and provided case agents with screenshots of the messages.  Case agents met with CI 3546 at a predetermined location where CI 3546 was searched by case agents for drugs, weapons, money, and other contraband with none located.  CI 3546 was then given $9,000 Official Advanced Funds (OAF) to make the purchase and equipped with digital recording devices.  Under the direction of case agents, CI 3546 then attempted a recorded call to

Page 19

Alexander CRAWFORD to confirm the meeting location for the deal. Alexander CRAWFORD did not answer, but responded in a message through Signal that he (Alexander CRAWFORD) would be ready at 1:00 p.m. Case agents directed CI 3546 to send a video of the buy funds to Alexander CRAWFORD. After sending the video, CI 3546 immediately received a call from Alexander CRAWFORD, which case agents were able to record. During this phone call, Alexander CRAWFORD indicated he "needed to go grab it" and directed CI 3546 to meet at the Qdoba restaurant located on East Brady Street in Milwaukee, Wisconsin.

40.     Case agents were still conducting surveillance at Alexander CRAWFORD's residence, 2872 South 16th Street, Milwaukee, WI. Case agents observed a white Lexus sedan with Wisconsin license plate AMZ-8451 pull into the alleyway behind the 2872 South 16th Street. This vehicle is registered to Andrew CRAWFORD, Alexander CRAWFORD's twin brother, who had a list address of 1500 Marquette Avenue, South Milwaukee, WI. Case agents saw the driver of the Lexus exit the vehicle and throw something into the garbage can. Then male wearing a red sweatshirt exit the back door of the 2872 South 16th Street and entered the Lexus. Case agents continue to follow the Lexus but lost it for a brief period of time in the area of 1400 West Brady Street.

41.     CI 3546 was driven to the buy location, 1348 East Brady Street, Milwaukee, WI by case agents using an undercover vehicle (UCV). Upon arriving at the location, CI 3546 exited the UCV and entered the Qdoba restaurant. Shortly after CI 3546 entered the Qdoba, case agents observed a white Lexus sedan (bearing Wisconsin license plate AMZ-8451) park in front of the restaurant. This vehicle is registered to Andrew CRAWFORD, Alexander CRAWFORD's twin brother. CI 3546 was then observed exiting the Qdoba and entering the front passenger seat of the Lexus sedan. The Lexus was observed by case agents driving a couple blocks away from the

Page 20

Qdoba and then returning. In addition to physical surveillance of the transaction, case agents were also monitoring the live audio being transmitted from the devices CI 3546 had been equipped with. Once the Lexus returned to the Qdoba, case agents observed CI 3546 exit the vehicle and begin walking west on East Brady Street. CI 3546 was followed directly to a predetermined meeting location where he/she turned over a zip-loc baggie containing a white powdery substance. Case agents then recovered the electronic devices CI 3546 had been equipped with. CI 3546 was also searched by case agents for drugs, weapons, money, and other contraband with none located.

42.    CI 3546 was interviewed by case agents following the transaction. CI 3546 stated he/she received an incoming call from Alexander CRAWFORD on Signal while CI 3546 was inside the Qdoba, and that Alexander CRAWFORD told CI 3546 that Alexander CRAWFORD was on the side of the building. Alexander CRAWFORD told CI 3546 to come outside. CI 3546 told case agents once he/she was outside the Qdoba, he/she observed the white Lexus running in the parking lot with the window cracked. CI 3546 stated once he/she got into the passenger seat of the white Lexus he/she did not recognize the driver and sole occupant of the Lexus. It should be noted that case agents believe the passenger of the Lexus must have been dropped off when case agents lost sight of the Lexus for that brief period of time.

43.    CI 3546 stated the individual in the driver's seat was wearing a red jacket and had tattoos around his neck and was heavier set than he/she remembered Alexander CRAWFORD to be from previous deals. CI 3546 stated once inside the Lexus he/she handed over the $9,000 OAF and was given a plastic bag containing what appeared to be 9 ounces of cocaine. CI 3546 stated the deal took place while the Lexus drove a couple of blocks around the area prior to returning to the Qdoba located at 1348 East Brady Street.

Page 21

44.     The suspected cocaine was later field tested by case agents where it yielded a positive result for the presence of cocaine.  The substance had an approximate weight of 250 grams, which is approximately nine ounces.  The suspected cocaine was sent to the DEA North Central Laboratory for analysis and safekeeping.

45.     CI 3546 is credible and reliable because CI 3546 has provided intelligence concerning drug trafficking activities for Alexander CRAWFORD and others that has been independently corroborated through queries of law enforcement databases, law enforcement.  CI 3546 has also made statements against his/her own penal interests.  CI 3546 has no felony convictions. CI 3546 has no arrests or convictions relating to dishonesty.  CI 3546 is cooperating with law enforcement in exchange for consideration regarding felony drug trafficking offenses.

46.     After the purchase on October 14, 2022, case agents conducted random spot checks of Alexander CRAWFORD's residence, 2872 South 16th Street, Milwaukee, WI.  On numerous occasions case agents observed Alexander CRAWFORD's white Lexus RX SUV bearing Wisconsin plate, APT-4987.  On October 26, 2022, case agents observed Alexander CRAWFORD coming and going from the front white door of 2872 South 16th Street and were able to obtain photographs of Alexander CRAWFORD entering the White Lexus RX SUV.

47.     On November 2, 2022, case agents directed CI 3546 to arrange the purchase of another nine ounces of cocaine from Alexander CRAWFORD in exchange for $9,000 OAF.  Prior to this purchase CI 3546 had informed case agents he/she had been receiving messages from Alexander CRAWFORD from a new number through the Signal application.  The new number being used by Alexander CRAWFORD through Signal was 414-779-3268, which is the same number federal probation and parole has on file for Alexander CRAWFORD.  CI 3546 then placed a recorded phone call through Signal to Alexander CRAWFORD at the new phone number, 414-

Page 22

779-3268, to arrange the purchase. Alexander CRAWFORD directed CI 3546 to meet him at the same location as the previous deal, the Qdoba located at 1348 East Brady Street. CI 3546 and CI 3546's vehicles were searched by case agents for drugs, money, weapons, and other contraband with none located. CI 3546 was then equipped with digital audio and video recording devices and given the $9,000 OAF to make the purchase. CI 3546 departed the predetermined meeting location in route to the Qdoba and was under constant physical surveillance by case agents. It should also be noted that case agents had established surveillance at Alexander CRAWFORD's residence, 2872 South 16th Street, Milwaukee, WI, prior to CI 3546 contacting Alexander CRAWFORD. The White Lexus RX SUV was not observed by any of the surveillance units at this time. However, the White Lexus RX SUV was observed on the morning of November 2, 2022, parked in front of 2872 South 16th Street, Milwaukee, WI by case agents.

48. CI 3546 was followed directly to the buy location by case agents and was observed parking at the Qdoba located at 1348 East Brady Street. Shortly after CI 3546 parked, the White Lexus RX SUV was observed parking in the same parking lot a few spaces away from CI 3546's vehicle. CI 3546 was observed exiting CI 3546's vehicle and entering the passenger seat of the White Lexus RX SUV. Case agents monitored the live audio being transmitted by the electronic devices that CI 3546 had been equipped with. Case agents were able to overhear as the transaction took place inside the White Lexus RX SUV. Once the deal concluded CI 3546 was observed exiting the front passenger seat of the White Lexus RX SUV and walking back to CI 3546's vehicle. CI 3546 was followed directly back to the predetermined meeting location where he/she turned over a zip lock baggie containing a white powdery substance. Case agents then recovered the electronic devices that CI 3546 had been equipped with. CI 3546 and CI 3546's vehicles were also searched by case agents for drugs, weapons, money, and other contraband with none located.

Page 23

49. CI 3546 was interviewed following the deal by case agents. CI 3546 stated he/she received a text message through Signal from Alexander CRAWFORD instructing CI 3546 to, "hop in." CI 3546 stated he/she asked Alexander CRAWFORD if he meant to "hop in" the Lexus SUV and Alexander CRAWFORD indicated, "yes." CI 3546 stated once inside the White Lexus RX SUV Alexander CRAWFORD had the cocaine ready to go and packaged in the zip lock baggie. CI 3546 handed Alexander CRAWFORD the $9,000 OAF and Alexander CRAWFORD handed CI 3546 the baggie of cocaine. CI 3546 stated to agents that it was the same individual driving the White Lexus RX SUV for this deal that was driving the white Lexus sedan during the previous deal. CI 3546 believed this person to be Alexander CRAWFORD; however, case agents later reviewed the video recording and identified the person as Andrew CRAWFORD based on Andrew CRAWFORD's visible neck tattoos.

50. The suspected cocaine was later field tested by case agents where it yielded a positive result for the presence of cocaine. The substance had an approximate weight of 216.6 grams. Nine ounces should come out to approximately 250 grams. The suspected cocaine was sent to the DEA North Central Laboratory for analysis and safekeeping.

51. On November 15, 2022, Milwaukee Police Department (MPD) officers observed Andrew CRAWFORD's white, 2017 Lexus IS-F, Wisconsin license plate AMZ-8451, traveling south in the 3200 block of South 43rd Street, Milwaukee, WI. The Lexus was traveling at a high rate of speed. When officers attempted to stop the Lexus, the driver, who was identified as Andrew CRAWFORD, accelerated away at a high rate of speed. Officers attempting to stop Andrew CRAWFORD were operating a marked MPD vehicle with lights and sirens activated. Andrew CRAWFORD proceeded to flee MPD.

52.      Andrew CRAWFORD's vehicle ultimately became disabled at 5208 West Howard Avenue.  MPD observed Andrew CRAWFORD and his passenger, Maxyn Loya-Sanchez, running from the Lexus.  Loya-Sanchez was located and arrested. Loya-Sanchez told officers the driver was "Eric Mendoza", and they were just friends. She stated she had to pee and that is why the driver was speeding.  She also stated she told the driver to stop, and he told her "I'm scared." Loya-Sanchez stated she ran because she was scared.

53.      Officers eventually located Andrew CRAWFORD walking through the yard of 3850 South 56th Street and he was arrested.  Inside Andrew CRAWFORD's Lexus, officers found a bag containing over 700 grams of suspected marijuana. Officers were also notified by a citizen of several items located in the back yard of 5208 West Howard, which officers observed Andrew CRAWFORD running through and where his passenger was arrested.  Officers recovered a black Adidas bag containing over 30 grams of suspected cocaine, 47 hydromorphone pills, 78 Oxycodone pills, a digital scale, and two State of Wisconsin driver licenses for Alexander E. CRAWFORD, who is the twin brother of Andrew CRAWFORD.  Officers also recovered two iPhones in the yard, gold Apple iPhone 14 Pro Max and a White Apple iPhone Pro Max next to the Adidas bag containing the narcotics.  The suspected cocaine was field tested and tested positive for both the presence of cocaine and fentanyl.

54.      Andrew CRAWFORD provided a Mirandized interview to officers.  Andrew CRAWFORD stated everything in the car was "mine" and everything "you found is mine.  I'm a drug dealer."

55.      On November 16, 2022, case agents interviewed Andrew CRAWFORD while he was in custody of the Milwaukee Police Department.  Andrew CRAWFORD told case agents he currently had three different sources of supply for cocaine. Andrew CRAWFORD stated he could

purchase anywhere from nine ounces to a kilogram of cocaine. Andrew CRAWFORD stated he uses his iPhone to communicate with these suppliers to arrange purchases. Andrew CRAWFROD identified one of his sources as Darlin CONTRERAS. Andrew CRAWFORD stated CONTRERAS works at the barbershop located at South 16th Street and West Mitchell Street.

56. After case agents reviewed the booking photograph and conducted the in-person interview with Andrew CRAWFORD, case agents determined Andrew CRAWFORD was the individual CI 3546 believed to be Alexander CRAWFORD inside the Lexus during the October 14, 2022, and November 2, 2022, controlled buys. Case agents observed that Andrew CRAWFORD currently has tattoos across his neck that he did not previously have in March of 2022. The tattoo was also captured in his booking photo from November 15, 2022, arrest (figure 3).



Figure 3

57. On November 21, 2022, case agents asked CI 3546 if he/she had heard from Alexander CRAWFORD recently. CI 3546 stated Alexander CRAWFORD had attempted to call

Page 26

or text him/her multiple times through the Signal application over the past few days and CI 3546 had not responded to any of the calls or messages.

58.     Also on Monday, November 21, 2022, case agents obtained a search warrant signed by the Magistrate Judge Nancy Joseph authorizing the examination the two gold Apple iPhone 14 Pro Max and a White Apple iPhone Pro Max recovered by MPD during Andrew CRAWDORD's arrest on November 15, 2022.   Case agents reviewed information extracted from the white Apple iPhone described in the warrant. The iPhone is a white, iPhone 12 Pro Max (S/N F2LDQV2J0D41) assigned the number of 414-737-8191. The extraction shows the owner of the phone to be Andrew CRAWFORD with the iCloud account of dreambiginc.710@iCloud.com.

59.     On November 22, 2022, case agents meet with CI 3546.  Case agents had CI 3546 describe the tattoos on the neck of the person he/she believed to be Alexander CRAWFORD that sold CI 3546 controlled substances on October 14, 2022, and November 2, 2022.  CI 3546 stated that the tattoo on the neck of the person he/she believed to be Alexander CRAWFORD appeared to be a pyramid with an eye in the middle and wings going around both sides of the neck.  This description matches the tattoo shown in the booking photo of Andrew CRAWFORD.  Case agents then showed the booking photograph of Andrew CRAWFORD (figure 3) to CI 3546.  CI 3546 positively identified this photograph as the same individual that sold him/her cocaine on October 14, 2022, and November 2, 2022.

60.     Case agents reviewed recorded calls made by Andrew CRAWFORD while in custody at the Milwaukee County Justice Facility.

61.     On November 17, 2022, Andrew CRAWFORD made a recorded call to his twin brother Alexander CRAWFORD at 414-779-3268 (call #273091013). During this call Andrew CRAWFORD gives a password and iCloud address and asks Alexander CRAWFORD to wipe it.

Page 27

Andrew CRAWFORD and Alexander CRAWFORD went over the address several times; however, Alexander CRAWFORD was unable to do it. The iCloud address attempted to access was Valintine.Parez@iCloud.com.   At one point in the call, Alexander CRAWFORD three-way called with Andrew CRAWFORD and an unknown female they refer to as "mom".  "Mom" then attempted to access the account with no success.

62.     Case agents reviewed a call Andrew CRAWFORD made to Alexander CRAWFORD at 414-779-3268 (call #273253721) which occurred on November 20, 2022. The call began at approximately 3:25pm and lasted about twenty minutes. During this call Alexander CRAWFORD told Andrew CRAWFORD that he's "about to have 15 for you."  Alexander CRAWFORD asked, "you gonna sell one of my bicycles?"  Andrew CRAWFORD and Alexander CRAWFORD then had a conversation regarding a blue bag. Andrew CRAWFORD stated, "please don't tell me you gave it to." Alexander CRAWFORD reassured Andrew CRAWFORD that he had the bag, and they discuss the contents of the bag.  Andrew CRAWFORD told Alexander CRAWFORD "The one with the off-white labels, I should have three of them in there."  Based on my training, experience, and investigation into this DTO, I believe "off-white labels" to be code for narcotics.  Andrew CRAWFORD then directed Alexander CRAWFORD to a white folder, and they begin to discuss crypto currency. Alexander CRAWFORD estimated that they will have around 50 (thousand dollars) once he converts the crypto currency and obtains the "15."  Andrew CRAWFORD then told Alexander CRAWFORD to "stay out of the jam, stick with your little Chinese buddy, he's like a west coast Adam."  Andrew CRAWFORD stated, "remember buddy on the eastside, bro leave him alone, name starts with a K, leave him alone." This statement is consistent with a description of a confidential source that is working with case agents on the DTO investigation.

Page 28

63.     On November 26, 2022, case agents reviewed a recorded jail call made by Andrew CRAWFORD to Alexander CRAWFORD at 414-779-3268 (call #273533981). The call began by Andrew CRAWFORD asking Alexander CRAWFORD if he's still at South Ridge (shopping mall) and if Alexander CRAWFORD was with "Lee." Alexander CRAWFORD responded by asking, "why you asking all of these questions? You asking a lot of questions on these police ass phones." Andrew CRAWFORD stated, "tell little fat buddy, I say what it do." Andrew CRAWFORD went on to tell Alexander CRAWFORD that he should park far away and make "his fat ass walk, tell him he owes me money." Based upon training and experience, case agents believe this conversation to relate to Alexander CRAWFORD waiting for a drug customer known to both Alexander CRAWFORD and Andrew CRAWFORD near the South Ridge shopping center located in Greendale, Wisconsin.

64.     Based on my training and experience, these recorded jail conversations are consistent with Andrew CRAWFORD and Alexander CRAWFORD working together to distribute controlled substances.

65.     During the investigation, case agents were able to listen to the record jails calls, recorded controlled buys, and recorded communication with Alexander CRAWFORD's numbers 414-748-1534 and 414-779-3268. Case agents were also able to personally meet and talk with Andrew CRAWFORD. Based on these recordings and interactions, case agents determined that CI 3546 would set up and discuss controlled purchases with Alexander CRAWFORD, but then ANDREW CRAWFORD would then meet in person with CI 3546 to conduct the drug transaction. This is also consistent with court authorized electronic surveillance which indicated Alexander CRAWFORD's telephone 414-779-3268 traveled from the southside of Milwaukee to the north side of Milwaukee on October 14, 2002. Also consistent with Alexander CRAWFORD's

telephone 414-779-3268 being on the northside during the time of the controlled drug transactions on November 2, 2022.

## IV. INFORMATION REGARDING APPLE ID AND ICLOUD[1]

66.   Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

67.   Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

a) Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b) iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

c) iCloud is a file hosting, storage, and sharing service provided by Apple. iCloud can be utilized through numerous iCloud-connected services and can also be used to store iOS device backups and data associated with third-party apps.

d) iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other

---

[1]   The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

e) Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

f) Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

g) Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

h) App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

68. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication, and syncing mechanism.

69. An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access

most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

70. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

71. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

72.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

73.     Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging

service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

74. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

75. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

76. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date, and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.

Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

77.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

78.     Other information connected to an Apple ID may lead to the discovery of additional evidence.  For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators.  In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

79.     Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## V.     INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

80.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section I of Attachment

B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## VI.     CONCLUSION

81.     Based on the forgoing, I request that the Court issue the proposed search warrant.

82.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Apple.  Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

### Matter Number 2021R182

This warrant applies to information associated with the Apple IDs and Apple iCloud accounts associated with the following information, that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at Apple Inc., One Apple Park Way, Cupertino, California 95014.

**Account 1:**
Name: Andrew Crawford
Date of Birth: 09/22/1997
Phone: 414-737-8191
Addresses: 2418 N Bremen St, Milwaukee, WI 53212
              1500 Marquette Ave, South Milwaukee, WI 53172
Email: *dreambiginc.710@iCloud.com*.

**Particular Things to be Seized**

**Matter Number 2021R182**

**I.     Information to be disclosed by Apple**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.     All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.     All records or other information regarding the devices associated with, or used in connection with, the accounts (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"),

Page 38

Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.     The contents of all emails associated with **Account 1 from July 1, 2020 to present day** including stored or preserved copies of emails sent to and from the accounts (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.     The contents of all instant messages associated with **Account 1 from July 1, 2020 to present day**, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the accounts (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.     The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all

address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.      All activity, connection, and transactional logs for the accounts (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.      All records and information regarding locations where the accounts or devices associated with the accounts were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h.      All records pertaining to the types of service used;

i.      All records pertaining to communications between Apple and any person regarding the accounts, including contacts with support services and records of actions taken; and

j.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

The Provider is hereby ordered to disclose the above information to the government within fourteen days of service of this warrant.

Page 40

## II.      Information to be seized by the government

All information described above in Section I that constitutes evidence and/or instrumentalities of possession with intent to distribute controlled substances, and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, which have been committed by Austin MISURACO, aka "Stewie," Darlin CONTRERAS-LANTIGUA, Andrew CRAWFORD, Alexander CRAWFORD Andrew CRAWFORD, Quentin Moore, Quincy Moore, Montrice Hood ,and other identified and unidentified subjects during the period of **July 1, 2020 to present**, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.  any information relating to Austin MISURACO, aka "Stewie," Darlin CONTRERAS-LANTIGUA, Andrew CRAWFORD, Alexander CRAWFORD Andrew CRAWFORD, Quentin Moore, Quincy Moore, Montrice Hood, possession, or purchase of controlled substances;

b.  lists of customers and related identifying information;

c.  information related to types, amounts, and prices of firearm and drugs trafficked as well as dates, places, and amounts of specific transactions;

d.  any information related to sources of firearms and drugs (including names, addresses, phone numbers, or any other identifying information);

e.  communications related to drug and firearm trafficking, including electronic communications such as text and instant message;

f.  any information recording Austin MISURACO, aka "Stewie," Darlin CONTRERAS-LANTIGUA, Andrew CRAWFORD, Alexander CRAWFORD Andrew CRAWFORD, Quentin Moore, Quincy Moore, Montrice Hood schedule or travel;

g.  all bank records, checks, credit card bills, account information, and other financial records;

h.  The identity of the person(s) who created or used the Apple ID, including records that help reveal the whereabouts of such person(s);

i.  Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

j.    Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

k.    Evidence indicating the subscriber's state of mind as it relates to the crime under investigation; and

l.    Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, case agents, including DCI and USPIS, may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.